

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00445-CV

**IN THE INTEREST OF H.N.G.**, R.S.G., R.A.T., and J.M.T.

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00671
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: January 11, 2023

AFFIRMED

Mother[1] appeals from the trial court's order terminating her parental rights to her children. She brings one issue on appeal: whether the evidence was legally and factually sufficient to support the trial court's finding that termination was in her children's best interest. We affirm.

## BEST INTEREST

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. *See* TEX. FAM. CODE

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

§ 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (citation omitted). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (citation omitted). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*. at 346.

Further, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v.*

---

[2]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

*Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re J.J.V.M.M.*, No. 04-22-00405-CV, 2022 WL 17479144, at *5 (Tex. App.—San Antonio Dec. 7, 2022, no pet. h.) (explaining that a best interest finding does not require proof of any particular factors). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied).

In determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28.

The children subject to this suit are eleven-year-old H.N.G., ten-year-old R.S.G., six-year-old R.A.T., and four-year-old J.M.T. At the bench trial, only three witnesses testified: Georgiana O'Reilly (the Department's caseworker), the mother, and J.T. (the father of R.A.T. and J.M.T.).[4] The caseworker testified that allegations of physical abuse by Mother and substance abuse by Mother and J.T. led to the removal of the children. Pursuant to her court-ordered service plan, Mother was required to do "anger management, individual counseling, substance abuse assessment, psychological, parenting, attend parent-child visitation, as well as obtain and maintain

---

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).
[4]J.T.'s testimony related only to the facts surrounding the issue of whether his parental rights should be terminated.

stable housing" and "stable employment." Mother failed to complete individual counseling. The caseworker testified Mother had been unsuccessfully discharged "due to lack of attendance to her appointments, as well as failure to show progress on the five service goals." Although services had been offered to her since the beginning of the case, Mother had only initiated individual counseling two months before trial. The caseworker testified that Mother had anger issues and could become "very easily argumentative," which happened in "almost every one of" the caseworker's conversations with Mother.

At the beginning of the case, Mother was employed. However, months later, she was fired and was still unemployed at the time of trial. Mother told the caseworker that she "was thinking about enrolling into school." The caseworker replied that Mother needed stable income to provide for the children's basic needs. At the time of trial, Mother had also not shown "proof of housing." Additionally, the caseworker testified that Mother had not consistently visited the children. According to the caseworker, visitation was scheduled once per week, and Mother had last attended a month before trial, with Mother missing the last three visits. According to the caseworker, Mother's visitation throughout the case was "about 50 percent attendance, 50 percent not attending." The caseworker also testified about inappropriate conduct by Mother during visits, stating Mother had told the children during the visits, "You're going to come home with mommy. Say you want to come home with mommy." The caseworker told Mother not to make false promises of reunification and to not discuss the outcome of the case with the children. Because of "concerns over violating the visitation rules, making false promises to the children, as well as telling the children that they should say they want to come home with mom," the caseworker began monitoring the visits herself. Once the caseworker began monitoring the visits, Mother stopped coming for visitation.

With regard to Mother's substance abuse, Mother had stopped attending Narcotics Anonymous. The caseworker told Mother that she was supposed to continue with the Narcotics Anonymous meetings and asked for proof to be sent. Mother never provided any proof that she started attending Narcotics Anonymous again.

The caseworker characterized Mother's relationship with H.N.G. and R.S.G., the two older children, as "strained." While H.N.G. and R.S.G. had not stated that they did not want Mother to be their mom anymore, the caseworker testified they said something close to that statement. According to the caseworker, when she spoke with the children, they stated they "want[ed] to remain in their current placements." H.N.G. and R.S.G. were placed with their father. The caseworker testified that they were "doing really well" with their father and "all of their basic needs [were] being met." According to the caseworker, H.N.G. and R.S.G. had told her they wanted to live with their father and felt safe with him.

R.A.T. and J.M.T.'s father was incarcerated.[5] R.A.T. and J.M.T. were placed in a licensed foster home. The caseworker testified they were "doing really, really well in a home that would like to adopt them." According to the caseworker, "They came in needing a little bit of dental work, a little bit of medical as well—just their checkup appointments and such. All of those have been completed." The caseworker testified they become excited when they see their foster home, and all their needs are being met by the foster parents. The caseworker testified she had "seen an improvement" in the children since their placement. Further, the Department had taken steps to ensure the children, despite residing in separate homes, will continue to have contact with each other in the future.

---

[5]The trial court also terminated his parental rights to R.A.T. and J.M.T. He did not appeal.

The caseworker testified the Department was not in favor of Mother maintaining some conservator rights:

> [W]e're still seeing the same issues that we've seen at the start of this case. It was addressed thoroughly with her. And the continued emotional stress that the children are going through, especially [H.N.G. and R.N.G.], with being told to state something to CPS that they did not believe. . . . My primary concern is that [Mother] is unable to provide for [the children's] basic needs. She's unable to provide for their emotional needs and general well being, as well as concerns that the children would be subject to inappropriate discipline if put back in her care.

During her testimony, Mother admitted that she was not employed, but that she was "looking for work" and had not been hired "anywhere because of [her] criminal background." Mother also admitted she stopped attending Narcotics Anonymous, but claimed she had begun attending again. She testified she missed visitation with her children because she had flu and COVID symptoms. When asked whether she had missed 16 to 18 visits as testified to by the caseworker, Mother stated she may "have missed a few, but it wasn't more than a handful." Mother stated she had a few arguments with the caseworker, but stated the arguments were a result of her being confused. Mother denied telling the children they would be coming home soon. Mother testified when the children asked her when they would be coming home, she replied that she did not know.

Mother testified her understanding of why the children had been removed was "[b]ecause of substance abuse" and allegations of her physically abusing the children, which she stated "were false." When asked whether she understood her older two children did not want to come home and live with her, Mother replied, "That is false. I have recordings of them saying otherwise." Mother also stated she was not aware of any outcries her children made against her about physical abuse.

At the end of the hearing, the ad litem told the trial court that the two older children (H.N.G. and R.N.G.) had "been very vocal" with her "throughout this case from the very beginning that

they do not want to be placed with their mother." According to the ad litem, the two children had "made outcries of physical abuse [by Mother] directly to [the ad litem]."

In reviewing all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in her children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. There was evidence that Mother was unemployed and had not provided proof of stable housing. Mother had not completed individual counseling as ordered by the court. There was also evidence she had stopped attending Narcotics Anonymous and had provided no proof that she had returned. The trial court, as factfinder, could have found her testimony that she had continued the classes not credible. *See In re J.O.A.*, 283 S.W.3d at 346 (explaining that trial court, as factfinder, is sole judge of credibility and weight of the evidence). Further, there was evidence Mother had attended only about half of the visitations with her children, had inappropriate visits with her children by promising them they would be able to return to her care, and had stopped attending visitation once the caseworker had decided to monitor the visits. There was also evidence that the two older children had made outcries of physical abuse by Mother and that they did not wish to return to her care. Additionally, both the older and the younger children were doing well in their current placements, which were meeting all their needs. Based on the above evidence the trial court could reasonably conclude Mother was incapable of meeting her children's financial and emotional needs at the time of trial. The trial court could have also reasonably concluded the children's placements were meeting their emotional and financial needs. We therefore hold the evidence is legally sufficient to support the trial court's best-interest finding.

With regard to factual sufficiency, Mother points out that she testified (1) the children wanted to return to her care; (2) she had completed most of her service plan; and (3) although she missed visitations, she missed because she was ill. However, the trial court as factfinder could

- 7 -

have disbelieved Mother's testimony and determined she was not credible. *See id.* Accordingly, we hold the evidence is factually sufficient to support the finding that termination of Mother's parental rights is in her children's best interest.

Finally, we note that in her "Issue Presented" section of her brief, Mother clearly brings only one issue regarding the sufficiency of the trial court's best-interest finding. However, toward the end of her brief and within her discussion of best interest, Mother discusses in a conclusory fashion the trial court's predicate findings pursuant to subsections (N) and (O). To the extent she intended to bring separate issues with respect to these two findings, we hold that the evidence is legally and factually sufficient to support the trial court's findings under subsections (N) and (O). We note that either a finding under subsection (N) or (O) is sufficient to support the trial court's termination order because only a single predicate finding is needed to support an order of termination. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Subsection (N) permits termination of the parent-child relationship upon a finding that a parent constructively abandoned a child who has been in the Department's permanent or temporary managing custody for not less than six months, and (1) the Department made reasonable efforts to return the child to the parent; (2) the parent has not regularly visited or maintained significant contact with the child; and (3) the parent has demonstrated an inability to provide the child with a safe environment. *See* TEX. FAM. CODE § 161.001(b)(1)(N). In her brief, Mother appears to attack only the first and third elements. She states that the Department has not made reasonable efforts to return the children to her. However, implementation of a family service plan by the Department is considered a reasonable effort to return a child to his parent if the parent has been given a reasonable opportunity to comply with the terms of the plan. *In re J.A.*, No. 04-20-00242-CV, 2020 WL 5027663, at *2 (Tex. App.—San Antonio Aug. 26, 2020, no pet.). The record reflects that Mother was given the service plan and ample time to complete it. *See id.* Mother next states

that the "Department has not demonstrated that [she] is unable to provide the child[ren] with a safe environment." The record, however, demonstrates two of the children made outcries of physical abuse by Mother, Mother has no employment, and Mother does not have a stable home. Thus, we hold the evidence is legally and factually sufficient to support the trial court's predicate finding under subsection (N).

Further, with respect to the trial court's predicate finding under subsection (O), Mother states that she complied with a majority of the provisions of the service plan. Without any clear argument, she then quotes from section 161.001(d). Subsection (O) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent has "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship" of the Department "for not less than nine months as the result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM. CODE § 161.001(b)(1)(O). The evidence shows in this case that Mother did not comply with her court-ordered service plan. *See In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A parent's failure to complete one requirement of [his family service plan] supports termination under subsection (O).").

Instead, Mother points to section 161.001(d):

A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of the evidence that:
    (1) the parent was unable to comply with specific provisions of the court order; and
    (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

TEX. FAM. CODE § 161.001(d). Thus, it was Mother's burden in the trial court to show that she was unable to comply with the provisions of the court-ordered family service plan, that she made a

good faith effort to comply with the order, and that her failure to comply with the order was not attributable to any fault of her. *See id*.; *see also In re L.L.N.-P.*, No. 04-18-00380-CV, 2018 WL 6069853, at *3 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (explaining that section 161.001(d) is an "affirmative defense" that a parent can assert to prevent termination on subsection (O) grounds).

On appeal, we consider whether there is legally and factually sufficient evidence from which the trial court could have reasonably determined that Mother had not proved by a preponderance of the evidence that she was unable to comply with the court-ordered service plan, she made a good faith effort to comply with it, and her failure to comply with it was not attributable to her fault. *See In re J.O.A.*, 283 S.W.3d at 344. We emphasize that under our standards of review, the "factfinder, not the appellate court, is the sole arbiter of the witnesses' credibility and demeanor." *Id*. at 346. During her testimony, Mother gave some excuses for her noncompliance; however, the trial court could have found her testimony to not be credible. Thus, we conclude that there is legally and factually sufficient evidence from which the trial court could have reasonably concluded Mother had not met her burden of proof under section 161.001(d). Therefore, the trial court did not err in terminating Mother's parental rights on subsection (O) grounds.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights.

Liza A. Rodriguez, Justice